Good morning. I can't tell you how pleased I and my colleagues are to be here this morning. Judge Ebell to my right, Judge Nucero to my left. All three of us sit in Denver in the Byron White Courthouse. And it's just been a special privilege for us to come to the Western Slope to Grand Junction for the first time ever for an oral argument of our court. We had a chance to meet with bar leaders last night. We had a great dinner and a chance to meet them and other community leaders. Much to my surprise, when I woke up and opened the Grand Junction Daily Sentinel, there was an op-ed with my picture over it. I'm sure that boosted the turnout. We are so gratified about the interest of the Colorado Mesa University student body, President Foster, and the general community for this really incredible standing room only audience. We don't get that every day. It's going to add maybe a little degree of difficulty to our two very experienced first litigants, but we'll see how we go. So procedurally, we're going to hear five cases this morning, five oral arguments. And as the previous speaker said, a judge on our court has selected these cases for oral argument because of the issues they raise, the complexity, the importance of the case. We don't hear oral argument in every case. We hear about only 30 percent. So these are cases of special importance. You've had access to some materials that describe the facts and legal issues, and I hope that gives you a roadmap to follow the arguments a little better and understand maybe the nature of some of the questions from our court. After the third argument, we'll take a ten-minute break, and you can settle in, and then we'll come back and finish the other two cases. As you can see from the clock in front of you, each of our oral arguments is 15 minutes per side. The appellant goes first. The appellant would be the party that lost below and under our system has an automatic right to appeal that decision to the intermediate courts, the Tenth Circuit being one of 13 national intermediate courts. If you lose here, there's one more step, and that's to the United States Supreme Court, except in a very limited number of cases. We're also going to have a luncheon program and a Q&A later in the day, targeted primarily at Colorado Mesa University students. But I think the public is welcome, and if you're interested and have the time, we'd certainly welcome your participation in this event. I want to thank the free program, the two judges that gave really nice presentations. I hope you had enjoyed that, and it was really a fine history lesson of what the federal judiciary is all about and what we try to accomplish as judges. As Judge Gallagher said, after an oral argument, you're not going to hear a decision. The three of us will go back behind this room and discuss the arguments and the cases that we've heard. We'll then do a tentative vote on what we think the appropriate outcome would be. And then as presiding judge, I'm presiding because I sit in the middle, and I will assign the case-writing assignments to one of my colleagues or myself. And then we will go back to Denver, and over the next couple weeks and months, we will prepare proposed dispositions that we then circulate amongst the three of us and try to reach a resolution. And as Judge Gallagher said, we are frequently united in our outcomes. But if not, a judge that disagrees can write either a dissenting or a concurring opinion. After we decide on an outcome, we circulate it to all of our colleagues on the 10th Circuit to take a look at, and then a decision is issued that provides notice to the litigants and the parties and the public as to how we came out. One of the strengths of the American judiciary is that we explain our decisions. It's not a yes or no, up or down. We write a written decision, and the public, the lawyers, can see exactly our reasoning and thought processes on why we reached the decision that we did. And I think that's one of the unique strengths of the American judiciary is really, as Judge Gallagher said about Justice Kagan's remark, is that all we have to do is, the only strength we have is in the persuasiveness of our reasoning and the trust that people have in this institution, which is really one of the most important parts of our American democracy. So with that introduction, let's get started. In our first case, I'm going to need my glasses. I see this fine print. Our first case is 17-1419, United States v. Nanez Rivera. Our first argument is from Howard Pincus from the Denver Federal Public Defender's Office. Mr. Pincus. Good morning. May it please the Court. Counsel. My name is Howard Pincus from the Federal Public Defender, and I represent Trinidad and Nanez Rivera. The district court here gave no weight to two facts that shed light on why the assault here occurred or to the fact that Mr. Martinez's injuries were minor compared to other incidents of bodily injury. By failing to give weight to these important factors, the district court imposed a substantively unreasonable sentence. The first set of facts that help explain why the assault here occurred and why it was not as inexplicable as the district court believed was Mr. Martinez's large-scale gambling operation. Mr. Martinez had been running the operation for years, and he dealt in tens of thousands of dollars per month. Such an operation, especially in a prison context, would inevitably lead to tensions, and it did here with the Texas Syndicate, of which Mr. Nanez Rivera is associated. So the victim had it coming to him? Not that he had it coming. It just helps explain that there were disputes that arose and that gave a context for why the assault occurred. This wasn't something that happened out of the blue for no reason, as the district court believed. The fact that there were tensions between Mr. Martinez and the Texas Syndicate and that it led to an assault two months before against Mr. Martinez helped explain why Mr. Nanez Rivera committed this stabbing. Wouldn't that show premeditation and planning and actually cut against your client's position? Well, nobody's denying that there was premeditation and there was planning. This was two people coming up to him in a living unit where they didn't live. An eight-inch shank? Eight-inch shank, five-inch blade, yes. Two staff rooms? Yes, and the district court said this is inexplicable, it's unprovoked. It basically was saying there's no reason for this. There was a reason. There was a backdrop, and that's important. I don't understand. There's always reasons for altercations in prison. Maybe because somebody had run a gambling operation that others weren't happy about. Maybe because you were in the wrong game. Maybe because you bumped somebody at the dining room table. Maybe because you said a word that was misinterpreted. Maybe because of a payoff or revenge. If we go down the road that prison violence is justified because there's reasons, or even that it should be taken into account, isn't that going to come up in almost every single prison violence case we ever have? Not necessarily. There are some unexplained ones, and the context does matter. We're not saying it's justified. Nobody has ever claimed that. We're not saying it's an excuse for Mr. Nunes-Rivera. But you're saying it legally has to be weighed into the equation. It should be weighed into the equation. So you're saying that legally every prison dispute is going to have to weigh into the equation and potentially affect the outcome, whether it's a grudge or whatever. Depends on what the reason for it is. It's part of the circumstances of the offense under 3553A1 that needs to be considered. And the district court here dismissed it by analogizing it to the victim of a sexual assault having it come to her based on what she was wearing. And there's simply no comparison. There is no legitimate basis for considering the attire of a sexual assault victim as relevant to why the assault occurred. But Mr. Martinez's illegal actions and the tensions and frictions that it generated do help explain why the assault here occurred. It seems to me the shocking thing to me about this case is that they're having these gambling operations in prison. I mean, colored lights, a lot of entertainment. Come here to my casino, it's a little better one than the one down the other cell. Is this common? I'm not sure it was a casino atmosphere, and I don't know how common it is. But certainly something on this scale I don't think is common at all. I mean, tens of thousands of dollars a month is what the investigation at USP Big Sandy found. What role did your client play in all of this? He was the person running the gambling operation. Tens of thousands of dollars a month? Yes. Wow. And the officials at USP Big Sandy said he can't remain on the compound. He is creating a danger to other inmates, to staff, and to himself if he remains on the compound. And when he was transferred to USP Pollock, that's what happened. He was assaulted. So that's why this case is different than just saying, well, there's always something going on. Yes, there may be something going on in many cases, but the extent of it is here. But this particular defendant was not part of that gambling operation. He didn't lose money in it. So it appears, at least, that maybe he was simply asked to perform a bidding of his game to get revenge because tribute wasn't paid. I mean, isn't that one step removed from sympathy? Well, we're not saying that he was himself personally shorted. That's correct. You agree he wasn't.  You agree he wasn't shorted or anything like that. We don't have anything to indicate that he was. But it was friction between Mr. Martinez and the Texas syndicate. There was disputes over gambling, apparently, and Mr. Niles Rivera was associated with the Texas syndicate. And that tension, those disputes, the externalities, if you will, of what Mr. Martinez was doing helps explain why there was an assault here. So what's your best case? I don't have a case that looks like their case. We're not saying that. Is this a matter of first impression for us? I don't see a case that this Court has decided where this kind of prison tensions were accounted for. But it's clear under the guidelines. I mean, under 3553A, this is a circumstance of the offense. This bears on why the offense occurred. And that is something the district court shall consider according to 3553A. Well, our cases say there's a presumption of correctness or reasonableness if the judge sentences an individual within the U.S. sentencing guidelines. And here the guideline range was 57 months to 71 months. Your client asked for a departure downward from 57. He wanted 51 months was the ask. And then the court ended up sentencing him to 68 months, which is within the guideline range, three months below the maximum. And our cases say there's a presumption of reasonableness in those circumstances that you have to overcome. And I understand your argument, but weren't these arguments made to the district court? The district court heard it all and then made a holistic weighing of the factors and gave the sentencing bill? Well, they were heard by the district court, and the district court did consider them. That's a variant of procedural reasonableness where, of course, you're arguing it's substantively unreasonable. I thought this was a procedural case when I first started reading the briefs. No, not at all. We are arguing that as a matter of substance, this sentence is too long. And, yes, there is a presumption of reasonableness for a within-guideline sentence. It's a rebuttable presumption, of course. And, actually, what needs to be shown to overcome that presumption is what always needs to be shown, which is that on the particular facts, the sentence is just unreasonable. It's outside the range of available choice. Following up on Judge Cancero's question, have we ever found a within-guidelines sentence substantively unreasonable? No. Are you aware of another circuit that's found? There are other circuits. I don't have them at my fingertips, but there have been a handful of cases in which within-guidelines sentences have been held to be substantively unreasonable. But this Court did indicate in Walker, which obviously was a sentence way outside the guidelines, that the factors that the district court considered bear on the reasonableness, substantive reasonableness of the sentence. And here the district court, as I said, gave no weight to the gambling operation that provided the backdrop. Well, see, that's an important point, though. And that's why, Chief Judge Timkovich, I was confused, because you've been arguing at the beginning of your argument that the Court should consider it. And, in fact, that sounds like a procedural problem, that the Court didn't. But, in fact, the Court did consider it. The Court gave reasons why it wasn't persuasive. So you're really not making an argument that they should consider it. You're saying it should have prevailed. We're saying it should have weight in this context. Well, the Court did give consideration and decided that it wasn't entitled to weight. That's consideration. That's certainly consideration. That's the procedural component. We're not saying the district court didn't consider it. The district court heard the argument. It rejected it. It rejected it on that flawed analogy to a sexual assault victim in the context with respect to the- But it also considered it for substantive analysis. The very fact that he considered it demonstrates- But he didn't give it any weight. And that's what we're arguing about. Well, I mean- This was entitled to weight. I mean, it seems to me that you're not asking for the sentencing judge to give it weight. You're asking for a particular result without giving us any rationale or any precedence. Well, substantive reasonableness is always a question of how much weight these different factors get and what the reasonable sentence is under the particular facts and circumstances. This judge didn't give it much weight, did he? He gave that no weight. He dismissed it on the basis of that flawed analogy. But he also didn't- Isn't a judge entitled to give an argument no weight? He's entitled to give a factor no weight if it really deserves no weight. If it does deserve weight, then he should give it weight. And that's what we're arguing here. He also didn't give any weight to the shoving incident that occurred the day before this assault when Mr. Martinez shoved Mr. Nanez Rivera in a cafeteria full of inmates. That is an act of disrespect that in a prison culture calls for a response. And it helps explain why Mr. Nanez Rivera attacked Mr. Martinez and that it wasn't just for no apparent reason. This, again, is part of the factor. Should a sentence be designed to deter retaliation in a prison context? I spot you that that was provocative. One of the purposes of sentencing would be to deter future misconduct. And it seems to me the law would want to deter inmates from retaliating in prison. Certainly there's a deterrence. The deterrence points in one direction. But the circumstances and Mr. Nanez Rivera as the offender point in the other direction. It's not unexplained. Mr. Nanez Rivera has no prior convictions for any violence. This is something that is out of character for him. And it's something that may well not have happened outside of the prison environment as his prior record demonstrates. You also argued in your briefs that we should look at the severity of injury for the victim. Could you elaborate on that? Sure. The district court said that the injuries here were superficial. The prosecutor described them as minimal. The prosecutor's district court's comments are on pages 54 to 55 of volume 3. The transcripts of the prosecutor's on page 56. How many inches of this six-inch shank, how many inches were inserted or actually penetrated the victim's body? I'm sorry. The wounds were three-quarters of an inch and one inch. A one-inch abdomen stab is de minimis? I'm not saying it's de minimis, but it's minimal. We're looking at this in the continuum of what is bodily injury. The district court's reasoning was there are greater injuries. So you wanted to write an opinion that says a one-inch stab wound accompanied by a lesser wound is not entitled to consideration? Oh, of course it's entitled to consideration. It's a bodily injury at three offense levels to the offense here. Yeah, well, we are arguing that in the universe of bodily injuries, this is at the low end of the spectrum, and that's what the district court should have considered. Instead, the district court said, well, there are, if it's serious bodily injury, if he had been in an ambulance and bleeding to death, I would give a higher sentence. But what we're saying is within the range of bodily injuries, this is at the low end of the spectrum and that it merits a lesser sentence here than a typical bodily injury. It may not be Monty Python range, but a one-inch wound? I mean, that could be deadly. Well, but the people who are on the scene, the prosecutor who's arguing for a higher sentence, the judge who has access to everything and who has the most familiarity with the case, they described it as superficial, minimal. That's what this court's starting point should be. But if he hadn't escaped the room, it could have, you know, if the victim hadn't escaped from the room where the attack commenced, it might have been fatal. Yes, but we oftentimes in assault, that's what the guidelines do is the more harm that results, the higher the sentence. Here, he got the three-level increase for bodily injuries, but this was a bodily injury that was low on the severity scale and should have taken him down from a typical bodily injury case. And when you add all of these together collectively, the district court didn't give weight to three important factors. He imposed a substantively unreasonable sentence. This court should vacate that sentence and remand for the imposition of a lesser sentence. Thank you, Mr. Pincus. We'll have a minute of rebuttal. Let's hear from the United States, Mr. Johnson. May it please the Court, Counsel? Michael Johnson for the United States. The district court here did not abuse discretion in sentencing Mr. Nanez Rivera to a within guidelines 68-month sentence. This court recognizes that in many cases there will be a range of available choices that the facts and law can fairly support and justify the sentence that the district court imposed. This case falls within that range of rationally available choices, given the facts here and the law applicable to this case. The record shows that the court considered the necessary Section 3553A factors. The court below considered the circumstances prior to the assault itself. It considered the circumstances of the assault, a vicious attack where two inmates came up behind the victim who was seated at a table viewing a computer. One put him in a chokehold and then the defendant here, Mr. Nanez Rivera, stabbed him twice with a shank. The district court also considered the resulting injuries to the victim. And then the two other important factors that the district court considered as well, Mr. Nanez Rivera's history and characteristics and also the need for the sentence imposed here, which is particularly important in the prison context. The district court's decision shows that the district court reached a sentence that is substantively reasonable. It's within guidelines. Don't you agree with Mr. Pincus, though, that the court should weigh the severity of the injuries and the context of the assault in imposing a sentence? I mean, the goal here is a particularized, you know, individualistic sentence for a particular defendant. And the facts differentiate his crime from, you know, other attacks. And don't you agree it would be error not to at least give some consideration to those factors in tailoring a sentence? It may be error, but there is no error in this case. The district court did indicate that it considered the circumstances surrounding the victim's activities, his gambling activities, the incident in the cafeteria the day before the incident where the victim allegedly shoved Mr. Nanez Rivera. The district court also considered the fact that Mr. Nanez Rivera was a member of the Texas Syndicate, a gang who was opposed to the gang that Mr. Martinez, the victim, belonged to. The court considered those factors. The court also considered the nature of the injury. The court said on page 39 of Volume 3, I can understand and appreciate the severity of the injury and wounds is a factor I should consider. But the court also said that it could not find that Mr. Nanez Rivera did not intend to inflict serious bodily injury on the victim. The court said that it wasn't able to determine that the one-inch stab wound was because Mr. Martinez, the victim, was able to fend off the blows or because the appellant here, Nanez Rivera, actually pulled his punches, so to speak. That's how the district court viewed it. As I understand it, the appellant is only arguing substantive unfairness. So all this discussion about whether the district court should have considered something or shouldn't, those are procedural questions, and somehow we've gotten sidetracked on a lot of whether they did or didn't. Instead, the only issue really presented to us is here's the sentence. Here are the facts, court of appeals. In light of those facts, was this substantively unreasonable, whether or not the district court went through the proper procedure or not. Do you agree with that? Yes, that's exactly right, Your Honor. And as we pointed out in our answer brief, that this Court's role is not to reweigh the factors under Section 3553A to determine whether the district court reached the proper result. This Court is not to reweigh, de novo, those factors. Instead, the Court should instead determine whether the district court itself reached the proper result. And even if this Court would not have weighed those 3553A factors in the same way or applied them in the way that the district court did, that doesn't indicate that this sentence is substantively unreasonable. On balance here, the district court did. Hold on. Not so quick there. You mean that the district court could just ignore all of these factors entirely in the process of arriving at a sentence? Is that what you just said? No, no. I did say that. I apologize. I didn't mean to say it, but I did say it. In Walker, for example, this Court found that the district court did, in fact, fail to consider important and relevant 3553A factors in sentencing the bank robber who did not meet the requirements. Well, that would be, as Judge Ebel does, procedural. Yes. But that's not before us. Right. I believe Walker was a substantive reasonableness case. This case is not a procedural reasonableness case. But here the district court did consider the factors that the record at pages 39 to 59 of Volume 3 shows that the district court considered three significant 3553A factors in reaching its sentence. Unlike Walker, for example, where this Court found that the district court really success at meeting the need. Personal characteristics. Yes. Exactly. Unlike that, this Court did consider these other factors. Mr. Nanyan-Zarrera focuses on this issue of mitigation, that this Court should consider the circumstances surrounding the event and that the Court should find that in mitigation, the district court should have reached a lower sentence. Our standard of review is for manifest unreasonableness, correct? Yes. And unless I've missed something, where do you understand the allegation to be of manifest unreasonableness? It appears from the briefing, and Mr. Pincus has stated this morning, that Mr. Nanyan-Zarrera argues that the case, that the sentence is manifestly unreasonable because the district court didn't accord proper rates in mitigating circumstances, including the nature of the injury and the circumstances prior to the assault. But we submit that the district court reached the right decision in not giving much weight at all to those particular factors. The Court said that if it were to consider in mitigation the circumstances, the day before, for example, the shove in the cafeteria, the Court said that this was a dangerous road to go down. That's how the district court described it. It said, can you imagine what the result would be, the chaos in prisons, if prisoners did not realize that there were real and serious consequences for severe attacks of this nature? And the Court said that the district court said that the district court did not realize    that the. But you're not arguing that we couldn't, it would be possible, would it not, for us to find something substantively unreasonable within the guideline range? Or are you saying we are simply not, it's not possible to find something unreasonable within a guideline range? I would say it's highly unlikely, Your Honor. That's not my question. Is it possible? Obviously, it's highly unlikely because we've never done it. But my question is, are you arguing, as the government's position, that an appellate court could not find a sentence substantively unreasonable so long as it was within the guideline range? I cannot think of a set of facts that could be present that would suggest to this court that the sentence is substantively unreasonable. Are there precedent out there of other circuits that have said that is a per se non-rebuttable conclusion, that if it's within the guideline range, we do not have the power to find it substantively unreasonable? I'm not aware of cases like that. I think that argument by the government almost takes my breath away, actually, because I think that gives the guideline range, which is designed to consider a lot of factors, but not every factor in the universe, just some. Well, if that's the government's argument on that, that would certainly give us some positive consideration. The government's not saying that a sentence within the guideline range can never be found substantively unreasonable. We're not saying that. But the U.S. Sentencing Commission did spend a lot of time and make a lot of effort to arrive at the guidelines themselves. And the Supreme Court has said in Gall and in Rita that if a sentence is within a properly calculated guideline range, that it is presumed to be reasonable. Presumed, but not conclusively presumed. Correct. And we're not saying that. That language really is contrary to a position that it would always irrefutably be reasonable if it's in the guideline range. Right. The Supreme Court didn't reach that conclusion. And we're not suggesting this Court should reach that conclusion either. If there are no other questions, I would concede the rest of my time to my opponent, and we would ask that the decision of the district court be affirmed. Thank you, Mr. Johnson. Mr. Pincus? For the edification of the spectators, the lawyer that goes first, the appellant, has the right to reserve some of his argument time for rebuttal. And so this is Mr. Pincus' opportunity to respond to any arguments made by the government counsel or elaborate on previous arguments that he made. Mr. Pincus? Very briefly, Your Honor. The sentence here has to be individualized, as the Supreme Court has repeatedly held. It has to be tailored to the circumstances of the offense and to Mr. Nanez Rivera. Giving him a 68-month sentence here, where there are factors that show context for the assault, does not provide just punishment, and where he has no history of violence, the 68-month sentence here is not needed to provide deterrence to him or protection of the public from him. It's just simply too long, it's substantively unreasonable, and we ask that it be reversed. Thank you. Thank you, counsel. The case shall be submitted, counsel are submitted. We appreciate the clear and concise arguments.